# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

PURPLE ONION FOODS, INC., a New
Mexico corporation,

        Plaintiff,

v.                                                                                 No. CIV 98-0758 BB/JHG

BLUE MOOSE OF BOULDER, INC., a
Colorado corporation, and CURTIS
TELLAM, an individual,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court for consideration of a motion to dismiss filed by Defendant Blue Moose of Boulder, Inc. ("Blue Moose") and a motion to dismiss filed by Plaintiff (Docs. 5, 51). Having considered the submissions of the parties and the applicable law, the Court will DENY Plaintiff's motion to dismiss the counterclaim filed by Defendant Tellam, and will hold in abeyance Blue Moose's motion to dismiss, pending the performance of limited discovery directed toward the jurisdictional question raised by the motion to dismiss.

**Facts and Procedural History**

This case arises out of a dispute over Defendants' production and sale of natural-food products which, according to Plaintiff, are produced using trade secrets (recipes) wrongfully misappropriated by Tellam. Plaintiff claims Tellam engaged in negotiations to become a franchisee of Plaintiff. Although the proposed franchise was to be located in Colorado, these negotiations occurred in New Mexico. During the course of the negotiations Tellam allegedly obtained trade

secrets from Plaintiff. The would-be franchising agreement did not reach fruition. Shortly thereafter, however, Tellam incorporated Blue Moose as a Colorado corporation and began producing the natural-foods products in question.[1] Plaintiff apparently learned of Blue Moose's activities from one of Plaintiff's customers, a natural-foods market in Santa Fe, after the customer was offered a free sample of two Blue Moose products. Plaintiff then filed suit against Tellam and Blue Moose, raising several claims including unfair competition and misappropriation of trade secrets. Blue Moose has moved to dismiss the lawsuit, maintaining this Court lacks personal jurisdiction.[2]

After this lawsuit was filed, Tellam filed a counterclaim against Plaintiff and a third-party claim against David Wilkins, allegedly the sole shareholder of Plaintiff. Tellam's counterclaim maintains that Wilkins and Plaintiff filed the instant lawsuit in order to drive Blue Moose out of business. In addition, Tellam claims Wilkins made defamatory statements to a reporter from the Boulder *Camera*, the hometown newspaper located in the municipality in which Blue Moose has its primary place of business. Tellam has raised claims of defamation, malicious abuse of process, intentional interference with business opportunities, and violation of Colorado's consumer protection statute. Plaintiff and Wilkins have moved to dismiss the Colorado statutory claim, arguing the statute has no application because Wilkins made the allegedly false statements in New Mexico rather than Colorado.

---

[1] These products included items such as regular hummus, a product made of chickpeas and sesame, and red-bell-pepper hummus.

[2] Tellam has not filed a similar motion. The discussion in this opinion, therefore, applies only to Blue Moose, the corporate defendant.

**Discussion**

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

Blue Moose maintains it does not have the requisite minimum contacts with New Mexico to allow this Court to exercise jurisdiction. Since New Mexico has equated its long-arm-statute jurisdiction as being coextensive with the requirements of due process, *see F.D.I.C. v. Hiatt*, 872 P.2d 879, 881 (N.M. 1994), this Court need only analyze the case under traditional due-process law and decide whether maintenance of the suit would offend the due-process clause of the Fourteenth Amendment. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). The minimum-contacts requirement may be met in either of two ways. *Id.* A court may exercise specific jurisdiction if a defendant has purposefully directed activities at residents of the forum, and the litigation results from injuries that arise out of, or relate to, those activities. *Id.* A court may also exercise general jurisdiction, which requires the defendant's contacts with the forum state are continuous and systematic. *Id.* Unlike specific, general jurisdiction may be exercised even if the lawsuit is not related to the defendant's contacts with the forum state. *Id.,* 102 F.3d at 456.

The minimum-contacts issue must be decided on the particular facts of each case. *Id.* The plaintiff bears the burden of establishing personal jurisdiction over the defendant. When, as here, a motion to dismiss is presented to the Court on the basis of affidavits and other written materials, Plaintiff must make only a prima facie showing of jurisdiction. *Id.* This Court must resolve all factual disputes in favor of Plaintiff. *Id.* Finally, the Court notes the Tenth Circuit encourages the practice of granting a plaintiff's request for limited discovery regarding a defendant's motion to dismiss for lack of jurisdiction. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077, fn. 5 (10th Cir. 1995).

3

In support of its motion to dismiss, Blue Moose points to the following undisputed facts: (1) Blue Moose was incorporated after Tellam's negotiations with Plaintiff were terminated; (2) Blue Moose is incorporated in Colorado, is not licensed to do business in New Mexico, and has not engaged in any transactions in New Mexico; (3) All sales of Blue Moose products occur in Colorado, to food distributors; and (4) Blue Moose does not employ sales representatives who solicit business in New Mexico, or otherwise directly solicit business in New Mexico.

Plaintiff, in opposition to the motion to dismiss, has raised three legal arguments. First, Plaintiff maintains Blue Moose itself has sufficient contacts with New Mexico, due to the activities of a food distributor, Boulder Fruit Express ("Boulder Fruit"), which has distributed Blue Moose products in this state. Second, Plaintiff argues that Tellam conspired with Blue Moose to misappropriate Plaintiff's trade secrets, and that Tellam's contacts with New Mexico are therefore attributable to Blue Moose for jurisdictional purposes. Plaintiff also makes another attribution argument, claiming Blue Moose is merely Tellam's alter ego and Tellam's contacts with New Mexico are therefore equivalent to Blue Moose's contacts. Finally, Plaintiff requests an opportunity to perform discovery with respect to all three of the legal theories stated above before a decision is made concerning the motion to dismiss. The Court will first address the attribution theories argued by Plaintiff.

**Conspiracy Theory:** There is authority for the proposition that in a civil-conspiracy situation, a co-conspirator's contacts may be attributed to other conspirators for jurisdictional purposes. *See, e.g.*, *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C.Cir. 1997) (discussing requirements for sufficiently pleading conspiracy for jurisdictional purposes). However, as Blue Moose has pointed out, ordinarily an officer or director of a corporation cannot conspire with

4

the corporation. *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 724-25 (10th Cir. 1984); *see also Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (5th Cir. 1986). If the general rule applies to this case, Plaintiff's co-conspirator attribution theory is as a matter of law not viable; absent the existence of a legally recognized conspiracy, it would not be logical to ascribe co-conspirator status to Blue Moose and Tellam.

*Wegerer* does recognize an exception to the general rule, if the officer or director of the corporation personally benefits from the illegal activities in a way separate and distinct from the way the corporation benefits. 744 F.2d at 725. In this case, however, there has been no suggestion or evidence that Tellam had an agenda different from that of Blue Moose. He created Blue Moose for the purpose of using the allegedly pirated recipes; he is the sole shareholder of Blue Moose and therefore benefits from Blue Moose's activities; and there has been no showing that he somehow profited outside the boundaries of the corporation from his claimed tortious acts. Based on the present allegations therefore, the Court must find this theory not viable as a matter of law. Given Plaintiff's theory, no discovery appears appropriate concerning issues relevant to the co-conspirator-attribution theory of jurisdiction.

**Alter-ego Theory:** Plaintiff contends Blue Moose is completely controlled and directed by Tellam, to the extent that Blue Moose is merely an alter ego for Tellam. On the basis of that assertion, Plaintiff maintains Tellam's activities in New Mexico should be attributed to Blue Moose for jurisdictional purposes. Blue Moose, on the other hand, argues the alter-ego theory is a theory of liability (piercing the corporate veil), rather than a theory applicable to questions of personal jurisdiction.

Contrary to Blue Moose's arguments, the Court notes the alter-ego theory of attributing contacts of one person or entity to another, for jurisdictional purposes, has been recognized in a number of jurisdictions. *See, e.g., Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp.*, 101 F.3d 3, 4 (2d Cir. 1996); *American Telephone and Telegraph Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). Moreover, the theory has a certain common-sense appeal. After all, it is alleged that Tellam incorporated Blue Moose to be the instrumentality by which he would profit from his misappropriation of Plaintiff's trade secrets. In some respects, at least under Plaintiff's allegations, Blue Moose's activities are merely a continuation of the process begun by Tellam's New Mexico contacts. In an analogous case, involving a corporation created after the initial misappropriation of trade secrets, a federal district court in North Carolina attributed the prior contacts of a different corporation to the subsequently-created corporation. *Western Steer-Mom 'N' Pop's, Inc. v. FMT Investments, Inc.*, 578 F.Supp. 260, 265 (W.D.N.C. 1984). The court relied on the fact that the subsequent corporation was the instrumentality by which the prior corporation was attempting to evade a franchising agreement and use misappropriated trade secrets. *Id.*

Unfortunately for Plaintiff, the Tenth Circuit has firmly rejected the type of analysis applied in the *Western Steer* case. In *Home-Stake Production v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020-21 (10th Cir. 1990), the Tenth Circuit held that the alter-ego theory cannot be applied where the contacts of the dominating individual or corporation (in this case, Tellam) are sought to be attributed to the dominated corporation (in this case, Blue Moose). Under *Home-Stake*, were the situation reversed, attribution might be appropriate – that is, if Blue Moose had contacts with New Mexico, and was merely an instrumentality controlled by Tellam, then Blue Moose's contacts could be attributed to Tellam for personal-jurisdiction purposes. *Id.* However, where a corporation is an

6

instrumentality of an individual, and it is the individual who has contacts with the forum state, the corporation is entitled to defend its status as a real legal entity, separate from the dominating individual, in a forum with which the corporation itself has sufficient minimum contacts. *Id.*[3] In other words, Blue Moose, as the allegedly dominated corporation, must have sufficient contacts of its own with New Mexico in order to be subject to suit in this district. Tellam's contacts with this forum will not be attributed to Blue Moose, even if Blue Moose is merely an alter ego for Tellam. Based on this Tenth Circuit precedent, the Court finds this jurisdictional theory non-viable as a matter of law. As is the case with the conspiracy theory, discovery will not be allowed with respect to the alter-ego analysis advanced by Plaintiff.

**Blue Moose's Contacts with New Mexico:** As mentioned above, the minimum-contacts issue is properly broken down into two inquiries, the specific-jurisdiction issue and the general-jurisdiction question. With respect to specific jurisdiction, the Court must determine whether Blue Moose purposefully directed its activities toward New Mexico, and whether this action is based on activities that arise out of or relate to Blue Moose's contacts with this state. *Kuenzle*, 102 F.3d at 456. The key dispute with respect to this theory is the extent to which the distributor's, Boulder Fruit's, activities in New Mexico may be attributed to Blue Moose. Blue Moose has no other contacts with New Mexico. It sells no products directly to New Mexico buyers, does no direct solicitation of sales in this state, does not advertise here, and has no telephone listing. It cannot be

---

[3]This difference in treatment regarding attribution of contacts may be the result of an unspoken desire to avoid infringing on the benefits conferred by corporate status, unless it is necessary to do so to avoid an unjust result. Where the dominating individual has sufficient contacts with the forum state, it is not necessary to bring in the dominated corporation to have a viable case. The guilty party, so to speak, is already before the court. In the reverse situation, however, the dominating individual who is the true actor will be out of reach of the forum state unless the contacts of the dominated corporation can be attributed to the individual.

said, therefore, that Blue Moose itself purposefully directed its activities toward New Mexico. However, if Blue Moose acted indirectly through Boulder Fruit, in an attempt to develop a market in New Mexico for its products, it is not insulated from this district's jurisdiction simply because the actual distribution of the product was through a distributor rather than Blue Moose's own efforts. *See id.*, 102 F.3d at 458 (actions of an independent distributor may not, depending on the circumstances, insulate a foreign company from specific jurisdiction); *Fidelity and Casualty Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 446 (10th Cir. 1985) (if a defendant's product comes into the forum state as a result of a deliberate, although perhaps indirect, effort by the defendant to serve the forum state's market, the forum state has jurisdiction over the defendant); *see also World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297-98 (1980) (if the sale of a product arises from the efforts of a manufacturer to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject it to suit in those states for causes of action arising out of the defective nature of product).

At this point the facts regarding Blue Moose's intentions with respect to the New Mexico market are unclear. Plaintiff makes several points in support of its position. First, Blue Moose sells its products to Boulder Fruit knowing Boulder Fruit is a food distributor. Second, Boulder Fruit distributes products only to Colorado and New Mexico. Third, a Boulder Fruit employee offered samples of Blue Moose products to one of Plaintiff's customers in Santa Fe, New Mexico. Fourth, several containers of Blue Moose products were found for sale in a health-food store in Taos, New Mexico.

To the extent the above assertions can be supported by evidence, an issue of fact would be created as to whether Boulder Fruit is attempting to develop a market in New Mexico for Blue

Moose products. What is currently lacking, however, is evidence that <u>Blue Moose</u> purposefully directed any activities toward this forum. There is no evidence that Blue Moose knew Boulder Fruit distributes products only in New Mexico and Colorado. There is no evidence Blue Moose encouraged Boulder Fruit's efforts to develop a New Mexico market for its products, or even knew of those efforts. There is no evidence Blue Moose knew any of its products would end up in this state. Plaintiff's mere assertion that Blue Moose "had to know where its product was going" is insufficient to supply the necessary factual connection.

At this point, therefore, Plaintiff has failed to establish a prima facie showing with respect to the purposeful-availment prong of the specific-jurisdiction test. However, questions regarding Blue Moose's knowledge and intentions with respect to the New Mexico market are peculiarly within Blue Moose's control. Also, Plaintiff has established that it is at least plausible that Blue Moose is engaged in a deliberate effort to serve the New Mexico market, through Boulder Fruit. Therefore, keeping in mind the Tenth Circuit's endorsement of the concept of pre-jurisdictional-ruling discovery, the Court will allow limited discovery concerning the extent to which Blue Moose knew of or encouraged Boulder Fruit's efforts to market Blue Moose products in New Mexico, as well as the extent to which such products are actually marketed in this jurisdiction.

In an effort to avoid the above result, Blue Moose argues that, even if Boulder Fruit's contacts with New Mexico can be attributed to Blue Moose, the cause of action asserted against it did not arise out of those contacts. Blue Moose contends the only harm suffered by Plaintiff occurred when Blue Moose sold its products to Boulder Fruit in Colorado. The Court does not agree that this is true as a matter of law. For jurisdictional purposes, a claim "arises out of" the activities of a defendant if the litigation results from alleged injuries that arise out of or relate to the defendant's

9

activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Kuenzle*, 102 F.3d at 455. The relevant inquiry is whether the plaintiff would have suffered the same injury even if none of the defendant's forum contacts had occurred. *Kuenzle*, 102 F.3d at 456-57. In this case, at least some of Plaintiff's alleged past and future damages[4] are occurring or will occur as a result of Blue Moose's claimed New Mexico activities. By engaging in activities designed to create or increase a market in New Mexico for Blue Moose products, if indeed such activities occurred, Blue Moose is directly competing with Plaintiff in the New Mexico market for organic food products. Blue Moose is doing so using Plaintiff's own recipes. Were it not for Blue Moose's New Mexico contacts, this direct-competition aspect of the harm Plaintiff seeks to prevent would not be occurring.

Furthermore, damages in a misappropriation or unfair-competition case are not limited to lost profits. Such damages may also include disgorgement of any profits earned from the use of the misappropriated secrets. *Telex Corp. v. IBM*, 510 F.2d 894, 931 (10th Cir. 1975). If Blue Moose is attempting to create a New Mexico market for its products, using trade secrets wrongly appropriated from Plaintiff, Blue Moose could be required to disgorge the profits earned from the increased market for its products in New Mexico, as well as any profits earned in Colorado from the sale of its products.[5] Although the disgorgement remedy is directed more toward preventing unjust enrichment by Blue Moose than toward injury suffered by Plaintiff, the fact that some unjust enrichment may

---

[4]It is appropriate to include possible future damages in the analysis because Plaintiff is requesting injunctive relief aimed at preventing such future harm.

[5]It does not matter that the profits earned would be from sales to Boulder Fruit, rather than directly from New Mexico customers. Any increase in sales of Blue Moose products in New Mexico would almost certainly result in increased profits to Blue Moose, because Boulder Fruit would buy more Blue Moose products to satisfy the increased demand in New Mexico.

10

result from Blue Moose's New Mexico activities augurs in favor of a determination that Plaintiff's claims arise, at least in part, from those alleged activities.

For the reasons stated above, the main cause of action alleged by Plaintiff arises, at least in part, out of the claimed New Mexico contacts and activities of Blue Moose. Therefore, the Court will allow the limited jurisdictional discovery discussed above before reaching a final decision on the jurisdictional question. Such discovery will also allow the Court to decide whether the exercise of jurisdiction would be reasonable, which is a requirement that must be met even if the purposeful-availment and arising-out-of prongs of the specific jurisdiction analysis have been satisfied.[6]

## B. Motion to Dismiss Tellam's Counterclaim

As noted above, Tellam filed a counterclaim based on Plaintiff's alleged violation of the Colorado consumer-protection statute. The alleged violation consisted of Plaintiff's statements to a Boulder reporter, disparaging Blue Moose products.[7] Plaintiff contends the statements were made in New Mexico, and the Colorado statute should not be applied. The parties agree that New Mexico follows the conflicts analysis found in the First Restatement, Conflict of Laws, sections 377 and 378 (1934). Under this analysis, the key question to determine is where the wrong occurred, because the law of the place of the wrong applies when deciding whether a legal injury has been sustained. In other words, if the place of the wrong is Colorado, the Colorado statute will apply. If the place of the wrong is New Mexico, the Colorado statute will not apply. *See In re: Estate of Gilmore*, 946

---

[6]Since the discovery will also be relevant to the general-jurisdiction theory, the Court does not address the viability of that theory at this time.

[7]The statements were actually made by Wilkins, but for ease of reference this opinion refers to Plaintiff. Also, nothing in this opinion should be construed as any sort of recognition by this Court that, if Plaintiff's statements were actually made, they constitute "disparagement" under the Colorado statute. That issue is not before the Court at this time.

P.2d 1130, 1133 (N.M.App. 1997) (New Mexico generally follows the doctrine of *lex loci delicti*, or law of the place of the wrong, in tort cases).

The parties further agree that the "place of the wrong" is the state where the last event necessary to create liability occurs. This agreement is in accordance with New Mexico law. *See id.* (The place of the wrong is the location of the last act necessary to complete the injury). Thus, the issue as argued by the parties has been narrowed considerably. Plaintiff maintains that, under the Colorado statute, its liability was complete when the disparaging statements were made in New Mexico. Plaintiff argues the Colorado statute does not require that any harm be suffered before a cause of action may be maintained. Tellam, on the other hand, contends the statute requires both a deceptive trade practice and resulting harm before any liability will arise toward a private party. Tellam points out that the harm in this case occurred in Colorado, when Plaintiff's disparaging statements were published in the Boulder newspaper.

The Court agrees with Tellam's argument that the Colorado Consumer Protection Act ("CCPA"), which includes the provision at issue in this case, requires actual injury before an individual may maintain a private cause of action. *See Hall v. Walter*, 969 P.2d 224, 234-35 (Colo. 1998) (to have a private cause of action under the CCPA, a plaintiff must demonstrate injury in fact to a legally protected interest, and must show the injury was caused by the defendant's actions). Therefore, the last event creating Plaintiff's possible liability to Tellam occurred in Colorado, where the allegedly disparaging statements were disseminated and Tellam allegedly suffered actual injury, and the Colorado consumer-protection statute applies to this case.[8] This result is in accord with New

---

[8]The Court notes Plaintiff's argument that the Colorado statute does not require actual harm before the attorney general may bring an action for a civil penalty arising out of any practices that violate the statute. This argument is inapposite because the question in this case is when a private

12

Mexico conflicts law, which as noted above defines the place of the wrong as the location of the last act necessary to complete the injury to the plaintiff. Finally, the Court sees no public-policy reason to refrain from applying Colorado's consumer-protection statute to the counterclaim brought in this case. *Cf. Torres v. State*, 894 P.2d 386, 390 (N.M. 1995) (recognizing last-act-necessary-to-complete-the-injury test, but applying New Mexico law on grounds of public policy). Plaintiff's motion to dismiss the statutory claim will therefore be denied.

**Conclusion**

In the Tenth Circuit, a corporation does not lose its status, for jurisdictional purposes, simply because it may be an instrumentality of a wrongdoer. Instead, the corporation's own contacts with the forum state must be analyzed to determine whether the exercise of personal jurisdiction is appropriate. As discussed above, both the conspiracy and alter-ego theories of jurisdiction are deficient as a matter of law, and the Court will not subject Blue Moose to discovery concerning those theories. However, given the Tenth Circuit's express suggestion that some form of discovery should be allowed concerning jurisdictional issues, and the possibility that Plaintiff may be able to prove Blue Moose purposefully directed activities toward New Mexico (albeit through the efforts of Boulder Fruit), the Court will allow discovery concerning that limited issue. The temporal limits to be placed on that discovery, as well as the type and amount of discovery to be allowed, shall be subject to any orders the Magistrate Judge finds appropriate. Finally, the Court will deny Plaintiff's motion to dismiss the Colorado consumer-protection-statute counterclaim and that claim may proceed.

---

cause of action arises under the statute, not when the civil-penalty provisions of the statute come into play. The last event making Plaintiff potentially liable to Tellam was the actual harm, if any, suffered by Tellam. As discussed above, that occurred in Colorado.

13

**O R D E R**

For the above stated reasons, the Court hereby GRANTS in part and DENIES in part the motion to dismiss filed by Blue Moose (Doc. 5); and DENIES the motion to dismiss the counterclaim based on Colorado's consumer-protection statute (Doc. 51).

Dated at Albuquerque this 14th day of April, 1999.

_____
**BRUCE D. BLACK**
United States District Judge

Counsel for Plaintiff:
Gregory D. Huffaker, Jr.
Edward C. Bagley
Huffaker & Conway, P.C.
P.O. Box 1868
Santa Fe, New Mexico 87504-1868

Counsel for Defendants
Mary E. Walta
White, Koch, Kelly & McCarthy, P.A.
P.O. Box 787
Santa Fe, New Mexico 87504-0787